UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JAMES ALLEN TATE, | No. 1:14-CV-0251 NJV |
| Plaintiff, | ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | (Docket Nos. 14, 17) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff James Allen Tate seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability benefits pursuant to Title II of the Social Security Act and for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. (Administrative Record ("AR") 1-5.) The decision is thus the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 6, 10.)

For the reasons stated below, the court will grant in part and deny in part Plaintiff's motion for summary judgment and will grant in part and deny in part Defendant's motion for summary judgment.

**BACKGROUND FACTS**

Plaintiff testified at the hearing before the ALJ that he had worked in 2001 framing houses, in 2003 building houses and doing framing and carpentry work, and in 2007 in building foundations for

homes that required lifting up to 60 pounds. AR 73-74. He also testified that he had worked as a carpenter for eight years between 1996 and 2004. *Id.* Plaintiff testified that he had last worked in the fall and winter of 2007 as a roofer. AR 35. He testified that he was right handed. AR 36.

Plaintiff testified that he believed he could no longer work because of shoulder, back, wrist and elbow pain, because his neck and back locked up, and because he had pain from his elbow to his forearm and fingers. AR 37-38. He testified that he injured his left arm in 2008 when he was arm wrestling and tore ligaments in his elbow, and later the same year dislocated his elbow. AR 39. Plaintiff testified that he had been undergoing physical therapy for a year and a half, which resulted in some improvement. AR 40-41. He stated that he was taking three pain medications, including Vicodin, which he took at a level at least twice what is prescribed. AR 41-42. He stated that the Vicodin helped with the pain for a short while. AR 42. He testified that he used marijuana daily for his pain. AR 43-44.

Plaintiff testified that he had been treated by a mental health professional for two years with medication and one hour psychotherapy counseling twice a month. AR 45-46. He stated that he had panic attacks on a daily basis and took Atavin that had the side-effect that it "knocked [him] out." AR 54-55.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are support by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusions." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The ALJ is "responsible for determining credibility, resolving conflict in medical testimony, and for resolving ambiguities."

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

## DISCUSSION

### I. FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509; 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability, *id*. § 404.1520(a)(3), 416.920(a)(3), and must use a five-step sequential evaluation to determine whether the claimant is disabled, *id*. § 404.1520; 416.920. "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

At Step One, the claimant bears the burden of showing that she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id.* Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 21, 2008, the alleged onset date. (AR 13.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" unless it is a "slight abnormality" that has "no more than a minimal effect on a person's ability to work." *Delgado v. Comm'r of Soc. Sec. Admin.*, 500 F. App'x 570 (9th Cir. 2012); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims"). The ALJ found that Plaintiff has the following

severe impairments: right shoulder chronic dislocation, mild degenerative disc disease of the lumbar spine and a depressive disorder. AR 13.

At Step Three the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in appendix 1. AR 14. The ALJ found that Plaintiff has the residual functional capacity to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with occasional crouching, crawling, stooping, kneeling, balancing and climbing ramps and stairs, no climbing of ladders, ropes and scaffolds, no overhead reaching, occasional reaching with the right dominant upper extremity, and no work at heights or around hazardous machinery. AR 15. The ALJ further limited Plaintiff to performing work involving simple, routine one-two step unskilled tasks and occasional interaction with the general public. *Id*.

At Step Four, the claimant bears the burden of showing he does not have sufficient RFC to perform past relevant work due to his impairments and/or limitations. *Id*. §§ 404.1520(e), 416.920(e). The ALJ found that Plaintiff is unable to perform any past relevant work. AR 20.

At Step Five, the ALJ bears the burden of establishing that considering his RFC, age, education and work experience, the claimant is able to do other work that exists in significant numbers in the national or local economy. *Id*. §§ 404.1520(g), 416.920(g). Here, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, and even with a limitation to unskilled work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 21.

//
//
//

4

## II. ANALYSIS

### A. Evaluation of Opinion Evidence of Physicians

Plaintiff contends that the ALJ erred by failing to properly weigh opinion evidence and resolve conflicts between the opinions of Plaintiff's treating physicians and the Social Security consultants. Plaintiff first argues that the ALJ erred in disregarding without explanation the findings of Dr. Les Kalman, Ph.D., the Social Security Administration's psychological consultant. These findings included that Plaintiff's mood was "frustrated and depressed, "and that "currently the depression is compounded by his physical limitations and debilities which preclude him from being able to work." AR 474. Dr. Kalman also diagnosed Plaintiff with "Adjustment Disorder Depressed secondary to General Medical Condition." AR 475.

Plaintiff contends that the ALJ's alleged error in disregarding these findings this was not harmless, because although the ALJ gave "significant weight" to the opinion of Dr. Kalman, AR 19, the ALJ did not include any limitation regarding "adjustment disorder" secondary to combination of physical and mental limitations in either the finding of impairments at Step 3 or in the residual functional capacity findings, AR 13, 15. Plaintiff claims that the inclusion of such a limitation could have changed the outcome of the case because of the testimony of the vocational expert that if the hypothetical individual would regularly miss work three or more days per month, this would preclude the capacity to "sustain any type of unskilled work." AR 77.

As Defendant argues, Dr. Kalman's statement that Plaintiff is unable to work is not medical evidence. This is a decision reserved for the Commissioner, and not a functional limitation supported by medical findings. *See* 20 C.F.R. § 404.1527(e)(1), 20 C.F.R. § 404.1527(e). The ALJ is not required to discuss all the evidence presented. *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Further, a mere listing of symptoms in a physician's statement is not entitled to deference by the ALJ. *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999) (doctor's identification of symptoms which might limit a claimant's ability to work not entitled to deference where opinion does not include explanation of how symptoms translate into specific functional deficits). Here, the physician did not include an explanation of how any of the findings at issue limited Plaintiff's ability to work.

Defendant does not directly address Plaintiff's contention to the extent that Dr. Kalman's finding of an "adjustment disorder" may constitute a separate diagnosis which the ALJ erred by failing to consider. Defendant has therefore conceded this issue. As explained below, the court finds that this case must be remanded on other grounds. On remand, the ALJ shall consider the extent to which Plaintiff's "adjustment disorder" constitutes a separate diagnosis which must be addressed in assessing Plaintiff's residual capacity.

Plaintiff contends that the ALJ erred in evaluating the opinion of Dr. Walker, one of Plaintiff's treating physicians. Plaintiff claims that although the ALJ discussed the opinion of Dr. Walker, he neither discredited Dr. Walker's opinion, nor set forth any explanation regarding what weight was given to his opinion. AR 17. Plaintiff argues generally that the ALJ therefore erred in evaluating the opinion of Dr. Walker, because the ALJ is required to consider the factors set forth in the Regulations and Rulings to determine the weight to be given to the opinion of a treating physician and to make specific findings, supported by substantive evidence, on that issue. (20 Code of Federal Regulations section 416.927(d)(2)(i)-(ii)). Specifically, Plaintiff argues that the ALJ erred by disregarding Dr. Walker's opinion that Plaintiff's medications for pain and muscle spasms would interfere with his concentration and result in fatigue, without setting forth specific, legitimate reasons based on substantial evidence in the record. Plaintiff correctly notes that the ALJ discusses the June 2012 residual functional capacity evaluation done by Dr. Walker, AR 532, but does not mention the doctor's findings regarding side effects of the medications taken by Plaintiff. Plaintiff also correctly argues that the ALJ does not address Dr. Walker's finding that Plaintiff's condition would cause him to be absent from work more than 3 times per month. AR 540.

Because Dr. Walker was Plaintiff's treating physician, the ALJ could not properly reject his opinion without providing "specific and legitimate reasons" for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983.) Although the ALJ partially summarized Dr. Walker's 2012 evaluation of Plaintiff, he provided no explanation for rejecting Dr. Walker's opinion that Plaintiff's medication would interfere with his concentration and result in fatigue, and that Plaintiff was likely to miss more than 3 days of work per month. This was error. Because the court is unable to review the ALJ's

6

decision without knowing the basis of his rejection of Dr. Walker's opinions, the case must be remanded for consideration of this issue.

## B.     Evaluation of Subjective Complaints and Limitations, Third Party Statements and Other Medical Sources

Plaintiff contends that the ALJ erred in failing to set forth clear and convincing reasons for discrediting Plaintiff's subjective complaints and limitations, as well as third party statements and opinions of other medical sources. Plaintiff argues that the medical evidence should be found to meet the first prong of the "*Cotton* test," regarding his testimony that the pain and limitations in his neck and right shoulder, elbow, wrist, and back were severe and together with panic attacks and side-effects of medication prevented him from working. AR 37-38, 62, 64.

Plaintiff's citation to *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1985) is unavailing. In *Bates v. Sullivan*, 894 F.2d 1059, 1071–72 (9th Cir. 1990) (Wright, J. and Wallace, J., concurring), the Ninth Circuit held that the *Varney–Gamer–Cotton* line of cases applies only to disability determinations rendered prior to January 1, 1987, because their formulation of the law concerning pain testimony is based on 42 U.S.C. § 423(d)(5)(A). Section 423(d)(5)(A), by virtue of its sunset provision, is "ineffective for cases in which the determination is rendered after January 1, 1987." *Id.* at 1071. The ALJ decision in this case is dated August 15, 2012, some fifteen years after the expiration of 42 U.S.C. § 423(d)(5)(A).

The Social Security Administration is expressly prohibited from granting disability benefits based solely on a claimant's subjective complaints. 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptom shall not alone be conclusive evidence of disability."). "An ALJ cannot be required to believe every allegation of [disability] or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

7

The ALJ stated that he considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence, based on the requirements of 20 CFR 414.1529 and 416.929 and SSRs 96-4p and 96-7p. The ALJ found that the statements of Plaintiff "and those of his parents, sister and friends fail to provide persuasive evidence of disability and limitations beyond those assessed herein." AR 19.

The ALJ found "specific and legitimate" reasons to reject Plaintiff's statements and those of his parents, sister and friends regarding his symptoms, among which were the inconsistent statements of Plaintiff. (AR 19.) *See Molina v. Astrue*, 674 F.3d 1104, 112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"). Although Plaintiff testified that he does not like to leave his house, he inconsistently testified and reported that he went to the library, shopped frequently, attended church, liked to fly "RC planes" and build them, biked and walked regularly. AR 19. The ALJ also found it inconsistent that Plaintiff said he could not work but was able to perform chores, wash dishes, shop, read, walk, cook, socialize with his best friend, prune plants and ride a bike. AR 19.

The ALJ further noted Plaintiff's testimony that he smoked marijuana "4 to 5 times daily." (AR 19.) The ALJ did not find it credible that Plaintiff received this expensive drug "free" from friends. (AR 19.) The ALJ noted other inconsistent statements regarding the onset of Plaintiff's symptoms. (AR 20.) Plaintiff told Ms. Marquette in 2008 that he began experiencing back, shoulder and upper back pain after a severe coughing episode, but told Dr. Axtell that the pain began after a bicycle fall in 2008. (AR 20.) Plaintiff then told Dr. Brown in September 2010 that his back and shoulder pain had begun after his fiancee tried to adjust his back and stepped on his shoulder. *Id*. One month later, he told Dr. Kalman that his injuries occurred after many years of manual labor and a result of falling off his bicycle. *Id*. The ALJ found that these inconsistencies cast doubt on Plaintiff's credibility. *Id*.

The ALJ found that Plaintiff's description of the severity of his symptoms on visits to his various medical practitioners cast doubt on his allegations of disabling pain and other symptoms. AR 20. Plaintiff repeatedly described his pain as only a 2 or 3 out of 10 on the pain scale. *Id*. Paul L. Axtell, M.D., described Plaintiff as experiencing "vague subjective pain," with "objectively no hard

8

findings." (AR 319.)  Dr. Axtell stated that he was not comfortable complying with Plaintiff's request that he fill out paperwork for Plaintiff indicating that Plaintiff was incapable of working so that he would not have to pay his child support.  (AR 319, 321.)  The ALJ found that while Plaintiff reported increased depression and irritability at times, he was repeatedly found to have improving GAF scores when compliant with his medication, with his reports of increased mental health symptoms frequently linked to evidence of noncompliance with the medications prescribed for these symptoms.  AR 20.  The court finds that the ALJ made substantial factual findings in support of his credibility determination regarding Plaintiff's subjective complaints.  Based on these factual findings, the court concludes that the ALJ did not arbitrarily discredit claimant's testimony.

Plaintiff argues that the ALJ erred by discrediting the determinations of Julie Payette, APRN, and Michelle Milller, LCSW, regarding his mental health and work capacity.  He argues that under 20 CFR Section s 404.1513(d)(1) and 416.913(d)(a), opinions of therapists are competent sources of medical information in regard to how severity of impairments affects ability to work.  The ALJ reviewed Plaintiff's histories with Payette and Miller, and reviewed the findings of each of these professionals.  AR 18.  After doing so, the ALJ stated that he did not find Miller's June 2012 conclusions regarding Plaintiff's work capacity persuasive because Miller is not an "acceptable medical source."   The ALJ correctly stated that as recognized in Social Security Ruling 06-03p, the opinion of a licensed clinical social worker such as Miller is not entitled to the same weight to be afforded to the opinion of a licensed physician. AR 19.  The ALJ opined that this was particularly true "when factors such as the relatively short treatment relationship between Ms. Miller and the claimant are taken into consideration."  AR 19.  Plaintiff contends that the ALJ failed to properly apply the factors from Social Security Ruling 06-03p in weighing the opinion of Miller, because he disregarded her  report that she had been seeing Plaintiff every two weeks for two years.  That report is found in a Medical Source Statement dated 6/29/12 and apparently signed by Miller.  AR 464.  This would mean that Miller had been seeing Plaintiff since approximately 6/29/10.  The ALJ refers in his findings to "when the claimant began seeing Michelle Miller, LCSW, at Clearlake Family Health Center, in December 2011."

While it appears that the ALJ was mistaken as to the length of the clinical relationship between Miller and Plaintiff, the court finds that this does not establish that the ALJ erred in finding that Miller's June 2012 conclusions regarding Plaintiff's work capacity were not persuasive. Plaintiff has not demonstrated that the ALJ erred in relying on Social Security Ruling 06-03p regarding the weight to be given to the opinion of a licensed clinical social worker and provides no authority holding that the standard is altered based on the length of a clinical relationship with a claimant.

Plaintiff presents no argument as to how the ALJ erred in "discrediting" the determinations of Julie Payette, APRN, other than his basic contention that opinions of therapists are competent sources of medical information in regard to how severity of impairments affects ability to work. The fact that such opinions are "competent sources of medical information" does not, however, show that the ALJ erred in determining that the determinations of Payette were not persuasive. The court finds no error by the ALJ.

### C.     Determination of Residual Functional Capacity

Plaintiff contends that substantial evidence does not support the ALJ's findings that he had the residual functional capacity to perform light exertion work on a regular and continuing basis and to perform the jobs described by the vocational expert. Plaintiff argues that the ALJ erred by not including the side-effects of Plaintiff's medications in the residual function capacity finding without providing an explanation for doing so. Plaintiff complains in particular that the ALJ did not specifically discredit his testimony that he gets "wired" from his pain medication, and that after he takes Atavan for panic attacks, "I'm out for the rest of the day pretty much." AR 42, 54. He claims that the ALJ erred by failing to comply with the requirement in Social Security Ruling 96-8p that the discussion of the objective and other medical evidence include a resolution of any inconsistencies in the evidence as a whole, and by disregarding the effect of the combination of his physical and mental impairment limitations.

After considering all of Plaintiff's supporting arguments, the court finds that Plaintiff's contention largely lacks merit. While the ALJ has a duty to explain why significantly probative evidence has been rejected, he is not required to discuss all evidence presented to him. *See Vincent v. Heckler*, 739 F.2d at 1394-95 (finding that ALJ was not required to discuss medical evidence that was

controverted). As set forth above, the ALJ made a detailed finding that Plaintiff's description of the severity of his symptoms on visits to his various medical practitioners casts doubt on his allegations of disabling pain and other symptoms. AR 20. While Plaintiff attempts to show inconsistencies within the opinion provided by consultative psychiatrist Dr. Kalman, the court is unconvinced. Plaintiff is not a medical expert and his opinion that Dr. Kalman's findings were internally inconsistent is not persuasive. Such internal inconsistencies, even if they exist, do not create an inconsistency in "the evidence as a whole." Further, the ALJ specifically held that despite his other findings, Dr. Kalman "notably" concluded that Plaintiff was "unlimited" in his ability to meet the mental demands of work. AR 17.

The ALJ's consideration of Dr. Walker's opinion is discussed elsewhere in this order.

**D.     Testimony of Vocational Expert**

Plaintiff contends that the testimony of the vocational expert was not substantial evidence to support the ALJ's finding that Plaintiff had the residual functional capacity to perform the light exertion jobs described by the vocational expert. The ALJ explained that if Plaintiff had the residual capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. AR 21. The ALJ found, however, that Plaintiff's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. *Id.* The ALJ found that Plaintiff:

> has the residual functional capacity to perform light work, as defined in 20 CFR 404,1567(b) and 416.967(b), with occasional crouching, crawling, stooping, kneeling, balancing and climbing ramps and stairs, no climbing of ladders, ropes and scaffolds, no overhead reaching, occasional reaching with the right dominant upper extremity, and no work at heights or around hazardous machinery. He is further limited to performing work involving simple, routine one-two-step unskilled tasks and occasional interaction with the general public.

AR 15.

At the hearing, the ALJ presented hypothetical number one to the vocational expert, which included Plaintiff's age, education and work experience. AR 75. The ALJ stated that the individual was restricted to lifting and carrying no more than 20 pounds, could occasionally perform "posturals," should never climb ladders, ropes or scaffolds, should not work at heights or with hazardous machinery, and could do unskilled, simple, routine work. AR 75-76. The vocational expert testified

11

that an individual with the limitations described by the ALJ had the capacity to perform work as a shoe packer or garment bagger, which jobs existed in significant numbers in the region. AR 76. The vocational expert agreed with the ALJ that Plaintiff was precluded from doing his past work. AR 76.

The ALJ added to hypothetical question number one the additional restriction of interaction with the general public to "less than occasional." AR 76. The vocational expert testified that this limitation would have no affect on the jobs he described. *Id*.

The ALJ asked the vocational expert, "If I said there should be no overhead reaching does it affect those jobs?" *Id*. The vocational expert responded, "no." *Id*. The ALJ asked, "If I said this hypothetical individual need to have a sit, stand option does that affect these jobs?" *Id*. The vocational expert testified that the numbers of the jobs would be reduced by approximately 30 to 50 percent. AR 76-77. Finally, the ALJ asked, "my last hypothetical if I said this individual would miss work three or more days a month regularly could they sustain any type of unskilled work." AR 77. The vocational expert stated, "No, not in my opinion. Not the jobs I listed or any other work." *Id*.

Plaintiff contends that in light of the ALJ's ruling in the residual capacity determination that Plaintiff was limited to "no overhead reaching" and "occasional reaching with the right dominant upper extremity," the ALJ erred by failing to accurately describe Plaintiff's limitations in regard to reaching in the hypothetical questions posed to the vocational expert. Plaintiff argues that the ALJ addressed only overhead reaching in his questions to the vocational expert, and not reaching in general. Plaintiff notes that the *Dictionary of Occupational Titles* ("the DOT"), description of shoe packer, DOT 920.687-166, indicates that this job requires the capacity for "Reaching - Constant." The DOT description of garment bagger, DOT 920.687-018, indicates that this requires the capacity for "Reaching - Frequent."

In response, Defendant argues that because the vocational expert testified that a "no overhead reaching" limitation did not affect the proposed jobs, "it is reasonable to infer that a less strenuous limitation, such as occasional reaching with one hand, would have been covered under the vocational expert's testimony." Doc. 17, 9:13-15. The court rejects this argument. The jobs identified by the vocational expert involve either constant or frequent reaching, not "occasional reaching." DOT 920.687-166, DOT 920.687-018. The court finds no basis to infer that this reaching can be performed

12

largely with one hand.  Because the ALJ expressly limited Plaintiff's residual functional capacity to "occasional reaching with the right dominant upper extremity, " AR 15, the vocational expert's testimony that did not address this limitation was not substantial evidence to support the finding that Plaintiff had the residual functional capacity to perform the jobs described by the expert.

Plaintiff also contends that because the ALJ did not specifically discredit his testimony that the side-effects of his pain and mental impairment medication significantly limited his functional capacity or Dr. Walker's indication that the side-effects of Plaintiff's medications included decreased concentration and fatigue, the ALJ erred in failing to include those limitations in the hypothetical questions presented to the vocational expert. *See DeLorme v. Sullivan*, 924 F.2d 842, 849-50 (9th Cir. 1991) ("If the hypothetical does not reflect all of the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a find that the claimant can perform the jobs in the national economy) (citations omitted).  As discussed above, the ALJ found specific and legitimate reasons to reject Plaintiff's claims regarding his symptoms, based on a lack of credibility stemming from extensive inconsistencies in his statements. Thus, the court finds no error.

Finally, Plaintiff contends that because the ALJ did not specifically discredit any of Dr. Walker's determinations of functional limitations, including the limitation of missing two to three days per month, the ALJ again should be found to have erred by "failing to explain why this limitation was not included in the hypothetical questions to the vocational expert."  This contention is nonsensical, because, as set forth above, the ALJ <u>did</u> include this limitation in the hypothetical questions to the vocational expert.  The error by the ALJ was in finding that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, when the vocational expert testified that Plaintiff could not sustain any type of unskilled work if he missed three or more days per month, and the ALJ had not rejected Dr. Walker's finding that Plaintiff was likely to do just that. *See Embry v. Bowen*, 849 F.2d 418, 423 (9th Cir.1988) (because the ALJ did not discredit the treating physician's opinion by specific, legitimate reasons, the ALJ erred by failing to include all of the physician's determinations of claimant's limitations in the hypothetical questions to the vocational expert, which required remand).  This issue must be considered on remand.

//

**CONCLUSION**

In light of the foregoing, the court reverses the decision of the Commissioner and remands this case for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: January 13, 2015

NANDOR J. VADAS
United States Magistrate Judge